ESTATE AND GUARDIANSHIP OF WM. A. WHITE, MINOR.
[No. 3,411; decided September 3, 1884.]

Marital Obligation—Filial Devotion.—A husband should not allow the duty he owes to his wife to be overcome by his love for his parents. Where one's marital obligation comes into conflict with his filial devotion, the latter should give way to the former.

Guardianship.—Assuming that a Father's Right to the Custody of his child revives upon the death of the mother, who had been awarded the custody under a divorce decree, yet it must be shown that the minor's interest will be conserved by recognizing the father's right.

Guardianship.—Where a Husband Deserts His Wife, who is left to care and provide for their infant child, this will be considered as an abandonment of the child, upon the father's application for guardianship after the mother's death.

Guardianship.—Reluctant as the Court Always is to Interfere with a Father's natural right to his child's custody, it will do so where the child's interest demands.

**Guardianship.—In the Case at Bar the Court Refused Guardianship** of a minor of divorced parents to its father, applying after the death of the mother, and granted letters to the maternal grandmother of the minor, for the following reasons: The child had been awarded to the mother by a divorce decree against the father; the father never provided for the child, except when compelled by judicial process; he never showed any interest in the child from the time of his desertion of the mother, and by his continued course of conduct manifested a lack of paternal instinct; the maternal grandmother had received the mother and child when deserted by the father, and had ever afterward given them shelter and assistance, and she was the nominee of the mother, by the latter's dying request.

H. C. Firebaugh, for first application.

K. M. Smith, for second application.

COFFEY, J.   We have here two applications for letters of guardianship of the person of Wm. C. A. White, a minor. The first application was filed on behalf of Mrs. Ellen Doran, the maternal grandmother of the minor; the second by Wm. F. White, the father of the minor, who was married to the minor's mother April 13, 1879, separated from her July, 1880, four months after the birth of the child, which occurred April 2, 1880; subsequent to the separation, a divorce was obtained by the mother of the minor on the ground of the father's desertion of her; child awarded to mother.   The mother died May 22, 1884, prior to which time the father married again.

The father of the minor appears to be a respectable young man, engaged in a responsible position for many years, earning for about six years of that time $100 per month, a salary sufficient for the maintenance of his small family in comfort.   Between the time of the separation, July, 1880, and October, 1882, and while Mr. White was in possession of abundant means, he contributed nothing to the support of his child, and then (October 9, 1882) only under judicial process and constraint of court.   It appears in evidence that, when Mr. White married, he took his wife to his mother's house, and owing to inability to live amicably with her mother in law, the wife left there and went with her child of four months to her own mother's home, where she remained until the moment of her death, May 22, 1884.

The minor's mother supported herself and child by prosecuting the vocation of bookbinder, and was expert and industrious always, except when her health compelled her to suspend work, and sometimes even when in ill health. According to all accounts in evidence, she was a most exemplary woman, a good wife, a dutiful daughter and an affectionate mother. She offered to live with her husband and to provide for her mother in law, but her husband "wouldn't have it." The husband seemed to care more for his mother than for his wife.

While his filial devotion is not to be censured in itself, when it came into conflict with his marital duty he should have observed the canonical command and the Scriptural injunction, and, if the occasion demanded, to leave his father and mother, and all the rest of his kin, and to "cleave unto his wife": Eph. v., 31. His regard for his mother should not have overcome his obligation to his wife. He allowed his wife to go away elsewhere for shelter with a four months' old infant, and then for over two years, in more or less infirm health, to labor arduously at a binding business, only yielding pecuniary aid when he was coerced to comply with the order of the court (awarding to her the custody of the child, and $15 per month alimony), under the fear of punishment for contempt of court. Whatever the extraneous influence operating upon his mind, he showed no interest in nor affection for his wife and child, from the time of separation, until after the death of his wife; and then he claims custody of the child as the father, and, therefore, naturally entitled to possession. By decree of court he had been deprived of that possession; he claims the death of the mother revived his right. Assuming the accuracy of his attitude, it should be shown that the interest of the minor will be conserved by the recognition of the right of the father. In this case it appears that the child is in the same custody that he was placed in by the mother at the age of four months; that the child has been tenderly nurtured, and is and has been treated with the most affectionate care by the petitioner, Mrs. Ellen Doran, the maternal grandmother, a widow with a family of grown children, all of whom

appear to be respectable persons in comfortable circumstances, and greatly devoted to the child; that when the mother died, and while realizing her approaching end, she manifested solicitude as to care of child, and expressed a desire that her mother (Mrs. Ellen Doran) should retain the child; that practically her mother has cared for the child for years, nursed him and his mother, the deceased Mrs. White, when both were ill, and when the child's life was in danger, procured competent medical attendance, during which time the father, W. F. White, although cognizant of the situation, never went to see the mother or the minor, and made use of expressions indicating (to employ mild terms) an absence of sensibility and sympathy in his relations to the mother and their child. Practically, when Mr. White allowed his wife to go forth from his protection, in delicate health, with her infant, also in delicate health, and to seek her mother's care, which was granted to her, he abandoned his child (as the court had decreed he deserted his wife), and the grandmother, Mrs. Ellen Doran, gave the child a good home, and has ever since that time treated the infant as if she were the mother. The father's natural right must bend to the interest of the child, as the court discerns that interest. Reluctant, as the court always is, to interfere with such natural right, the law and the evidence make clear the duty in this interest. The original award of the custody of the child to the mother; the dying request of that mother in favor of Mrs. Doran; the long-continued indifference of the father, and his contumacy in complying with the orders of the divorce court; his expressions before the death and during the illness of the wife (before and after divorce); his continued course of conduct manifesting a lack of the paternal instinct—all of these established circumstances warrant the court in granting the prayer of the maternal grandmother, Mrs. Ellen Doran, subject to such limitations in favor of the father's visiting the child as may be consistent with its secure custody and welfare.

---

While Parents are Presumed Competent to have Charge of Their Child, and the parental right will not lightly be disregarded, nevertheless the court, in appointing a guardian, is guided primarily by

what appears to be for the best interests of the child, and may award it to a third person whenever its well-being demands such a course: See 2 Ross on Probate Law and Practice, 950; Guardianship of Danneker, ante, p. 3, and note.